**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

|  |  |
|---|---|
| AMERICAN RENT-A-CAR,<br><br>    Plaintiff,<br><br>    v.<br><br>NORFOLK AIRPORT AUTHORITY,<br><br>    Defendant. | Case No. 2:26-cv-643 |

## OPINION & ORDER

Plaintiff American Rent-A-Car asks the Court a second time for a temporary restraining order (TRO) against Defendant Norfolk Airport Authority, based on the theory that the Airport Authority is relying on a pretext to terminate American's contract, when its real reason is that American's owner is Arab. Because American still does not demonstrate that it would likely succeed on the merits of its claims, its second motion for a TRO (ECF No. 11) will be **DENIED**.

## I.    BACKGROUND

On June 23, 2026, American sought a TRO, alleging that the Airport Authority discriminated against American based on American's owner's ethnicity, when it threatened to terminate the company's contract to operate at the airport because American failed to obtain insurance coverage required under the contract. ECF No. 2; *see* ECF No. 1. The Court denied the motion because American failed to demonstrate that it is likely to succeed on the merits of any of its claims. ECF Nos. 8, 9.

On July 2, 2026, American filed a verified amended complaint and a new motion for a TRO. ECF Nos. 10, 11. The amended complaint asserts that, in addition to citing American's failure to obtain the required insurance coverage, the default notice the Airport Authority issued also relies on American's failure to pay a bond and certain liquidated damages. ECF No. 10 ¶¶ 27–45; *see* ECF No. 10-6 (notice). American contends that the Airport Authority waived the bond requirement and that the liquidated damages provision is illegal. ECF No. 10 ¶¶ 35, 41.

Ultimately, American claims the Airport Authority relies on a "manufactured," "pretextual default," used to oust American because of "the ethnicity of [its] owner." ECF No. 10 ¶¶ 121, 134.

## II.    LEGAL STANDARD

A district court, in its discretion, may issue a TRO under Fed. R. Civ. P. 65(b) if the movant shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (standard for granting a preliminary injunction); *see Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021) ("The standard for granting a [temporary restraining order] or a preliminary injunction is the same."). Failure on any one of the *Winter* factors requires denial of the motion for a TRO. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2010).

## III.   ANALYSIS

The new motion for a TRO relies exclusively on Counts II and V of the amended complaint. ECF No. 12 at 3–7.[1] In Count II, American seeks an injunction against the airport terminating American's contract to operate at the Norfolk airport, as well as judgment declaring that (1) the Airport Authority waived the insurance requirements, (2) the insurance requirements were impossible to perform, (3) the Airport Authority waived the bond requirement, and (4) the liquidated damages the Airport Authority seeks to collect are an illegal penalty. ECF No. 10 at 15–16. Count V asserts the Airport Authority breached nondiscrimination and civil rights provisions in the contract, and an implied covenant of good faith and fair dealing, by using a pretext to oust American based on its owner's ethnicity. *Id.* ¶ 134.

In denying the first motion for a TRO, the Court explained that American did not show it is likely to prove the Airport Authority waived the insurance requirement or that the insurance requirement was legally impossible to perform. ECF No. 9 at 3–5. That has not changed. Now, by alleging additional grounds the Airport

---

[1] Though the motion does not rely on them, the Court has considered whether American demonstrates a likelihood of success on Counts I, III, or IV, which assert equal protection, discrimination, and procedural due process claims, respectively, against the Airport Authority's CEO and its general counsel, under 42 U.S.C. § 1983. ECF No. 10 ¶¶ 66–81, 117–123, 124–130. The Court is reluctant to delve into too much detail here, because creating a roadmap for counsel is not the Court's role. But given the difficulty of succeeding on § 1983 claims of this kind in the first instance and the doctrinal strength of qualified immunity as a defense, the Court finds that American does not do enough in the verified amended complaint to satisfy the first *Winter* factor as to Counts I, III, or IV.

Additionally, if American were to fail on Counts I, III, and IV, the Court may be left to decide whether to exercise supplemental jurisdiction over Counts II and V, which rely exclusively on state law. *See* ECF No. 10 ¶ 6. With that in mind, the Court cautions American to consider whether federal litigation is in its best interest.

Authority's relies on to terminate the contract, American creates an even tougher row for itself to hoe.

First, American claims the Airport Authority waived the bond requirement, either implicitly by failing to enforce it earlier, or explicitly in a separate promise that conflicts with the written contract. ECF No. 10 ¶¶ 105–111. Proving an implied waiver requires clear and convincing evidence, so mere nonenforcement is not enough. *See RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 827 S.E.2d 762, 769 (Va. 2019). Here, the best additional evidence American points to is an alleged promise that it would not need to pay the bond until a new rental car facility is completed. ECF No. 10 ¶ 31. But American will not be able to rely on parol evidence to prove an implied waiver, made at the time the agreement was formed, that conflicts with the express provisions of the written contract. *Scott v. Albemarle Horse Show Ass'n*, 104 S.E. 842, 848 (Va. 1920). And for the same reason, American would not be permitted to rely on the alleged explicit waiver independently. *See id.* Therefore, on the facts before the Court at this juncture, American does not show it is likely to succeed on its theory regarding the bond requirement.

American also contends the liquidated damages provision the Airport Authority seeks to enforce is an unenforceable penalty, "because it is untethered to any reasoned estimate of actual harm," and damages associated with failure to pay the bond are "not hard to calculate," because the bond "had a specific value." ECF No. 10 ¶ 41; *see O'Brian v. Langley Sch.*, 507 S.E.2d 353, 365 (Va. 1998). But American puts on no evidence—in the verified amended complaint or elsewhere—to *prove* that the liquidated damages bear no relationship to the Airport Authority's actual

4

damages. Moreover, American's argument that the value of the Airport Authority's harm is necessarily equal to the value of the bond is unpersuasive, because the contract provides for liquidated damages for many types of breaches, not just failure to pay the bond. ECF No. 10-1 at 69. For these reasons, American does not demonstrate a likelihood of success on its liquidated damages theory either.

Therefore, there is no relief requested in Count II on which American satisfies the first *Winter* factor.

As to Count V, American likewise does not demonstrate that it is likely to prevail on any of its theories about the Airport Authority 'manufacturing' a pretext to oust American. American admits the conduct the Airport Authority claims resulted in the default. *See* ECF No. 10 ¶¶ 16, 18, 52 (American did not have the required insurance); *id.* ¶¶ 32, 35, 43 (American did not pay the bond). Thus, American's claims rely on the theories of excuse discussed above. And at this juncture, those theories appear tenuous.

The amended complaint also asserts that American's appeal of the default notice was denied so quickly as to suggest that the decision was predetermined. *See* ECF No. 10 ¶¶ 48–49. While that allegation does support an inference that the cited reasons for terminating American's contract were pretextual, it is not enough to swing the first *Winter* factor in American's favor.

At bottom, American's claims appear less likely to succeed now than they did on the first motion for a TRO, because American now admits additional breaches of the contract. Even if the allegations in the amended complaint could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)—and even if American could ultimately

5

prove its breaches were excused and that the stated reasons for the Airport Authority's action were pretextual— on the evidence before the Court at this juncture, the extraordinary remedy of a TRO is not appropriate.

## IV.   CONCLUSION

Accordingly, American Rent-A-Car's second motion for a temporary restraining order (ECF No. 11) is **DENIED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
July 6, 2026